NEW JERSEY DEPARTMENT OF LABOR.
WORKMEN'S COMPENSATION BUREAU.

MARIA COCO, PETITIONER, v. HANNAH WILBUR (MRS. WILLIAM L. WILBUR), RESPONDENT.

Death From Accidental Shooting of Cranberry Picker—Was There An Accident—Was Accident in Course of Employment—What Compensation Should be Paid?

## SUMMARY OF FACTS.

Mrs. Wilbur, the respondent, operates a cranberry bog.

Joe Albin arranged with Mrs. Wilbur to secure twenty-two pickers and have them at the bog for work by Monday, September 8th, 1924. He engaged these pickers in Philadelphia and directed them to proceed with him on Saturday, the 6th, to the place where the picking was to be done.

Mrs. Wilbur was to pay sixty cents per bushel, of which sum Mr. Albin was to receive ten cents per bushel for securing the men and overseeing the picking and accounting.

The testimony shows that between three and four P. M. on Saturday, September 6th, Mr. Coco was shot, and died shortly after. When the decedent was first seen, immediately following the occurrence, he was in front of the toilet-house, and the attorney for the petitioner endeavored to establish that he was in the toilet when struck. One witness testified that about twenty minutes prior to this occurrence he saw the watchman firing at the toilet. Apparently, he was using it as a target. Another witness states he saw the watchman attempting to leave the premises and stopped him. A third witness testified he heard four or five shots over in the woods, possibly three-fourths of a mile away. This woods is in a gunning section.

The pickers slept in quarters or shanties on the premises, and petitioner's attorney contends it was a necessary element of the relations between the employer and the pickers for them

to be on the ground before the actual work of picking began, in order for them to prepare their living quarters, and that the men were in the course of their employment from the time they left Philadelphia, or at least from the time they arrived on the premises.

The respondent's attorney insists that since these pickers were paid by piece work at a stated figure per bushel, and Mr. Coco was killed before he had picked a berry, he could not have been in the course of his employment, and that if he was, there is absolutely no way of fixing a compensation rate.

## OPINION.

Four principal questions are involved in this case, namely:

(a) Was there an accident, and if so,

(b) Did it occur in the course of employment, and

(c) Did it arise out of the employment, and if so,

(d) What compensation rate can be fixed?

With respect to (a), the New Jersey Supreme Court has defined an accident as "an unlooked for and untoward event not expected or designed." In the present case no evidence was introduced to show that the injury was intentionally inflicted either by the deceased or by any other person. The testimony that the watchman had previously been firing a gun cannot be accepted as proving that he fired the shot responsible for the injury to the petitioner's husband. The testimony that the cranberry bog is in a hunting section, together with the testimony that shots were heard in the woods at different times on the afternoon of this occurrence, when coupled with the further testimony that no one seems to have heard the shot which killed the deceased, although many persons heard him scream when hit, makes reasonable the conclusion that the bullet came from the woods, and was fired by some unknown person, and that it accidentally struck this man. The event seems to have been without design and unexpected, and to be in compliance with the definition as given by the court.

Concerning (b), the courts have established that an accident occurs in the course of employment when it happens while a man is doing what the terms of his contract call upon him to do. To decide this question a scrutiny of the terms of the employment will be necessary. The contract provided in particular two things: The employe was to pick berries, and he was obliged in the furtherance of this contract to accompany the respondent's agent to the place of employment on Saturday preceding the Monday when the picking was to begin. It would appear that the employes were expected to remain until the completion of the harvest, as the testimony shows that no one was paid anything until the work was done, this course being adopted in the employer's interests to hold the pickers on the premises. In return for the above the employe was to receive fifty cents a bushel for the berries picked, and lodging. The testimony does not disclose whether or not board was also to be furnished. Lodging was furnished under the general terms of the contract, and had no relation to the rate per bushel or the number of bushels picked. The second phase of his contract, involving wages on piece-work basis, for the picking of berries, had not been reached under the very terms of that contract, but the first element thereof was entered upon when he left Philadelphia and quarters had already been assigned him and furnished. To that extent, therefore, he was in the course of his employment when shot.

Regarding (c), "an accident arises 'out of' the employment when it is something the risk of which might have been contemplated by a reasonable person when entering the employment as incidental to it." The risk of being shot while engaged in a rural district, where gunning takes place, is certainly not foreign to the situation met in this case. If this man had not entered into this contract he would not have experienced this accident. The injury must therefore have arisen "out of" his employment.

With regard to (d), the act provides that board and lodging shall constitute a portion of the wage, and shall be valued at five dollars per week. Heretofore this bureau, in the absence

of any provision indicating otherwise, has divided this sum into two parts, assigning three dollars as the value of the board and two dollars for the lodging. This, in connection with the minimum provision of the act, would establish the compensation rate as two dollars per week.

Reference may be had to the case of *Bryant* v. *Pissell,* 86 *Atl. Rep.* 458, for the rules quoted above.

In view of the foregoing analysis I am of the opinion that an award should be made in favor of the petitioner, and the following order will therefore be entered.

### ORDER.

A petition having been filed in this case under the provisions of the Workmen's Compensation act, and a hearing having been held on January 24th, 1925, with due notice, at which hearing the petitioner was represented by Harvey F. Satterthwaite, and the respondent by Aaron V. Dawes, I do find and determine as follows:

That Sebastiano Coco was, on September 6th, 1924, in the employ of the respondent, Hannah Wilbur.

That under the terms of his contract at the time he was shot the only remuneration he was receiving was that of lodging, and that the time had not yet arrived when he was to perform service for a financial consideration.

That the petitioner's decedent husband experienced an accident arising out of and in the course of his employment, which accident was subject to section 2 of the Compensation law, and was not self-inflicted nor due to intoxication, and of which the employer had knowledge within the period prescribed by law.

That the value of the wage at the time of the accident was two dollars per week.

It is therefore on this 21st day of March, 1925, ordered that judgment final be entered in favor of the petitioner, and that the respondent pay to the petitioner the sum of $150

on account of funeral expenses, and compensation at two dollars per week for a period of three hundred weeks, amounting to $600, of which amount $56 is due as of March 20th, 1925. Following this date further payments will be made at two dollars per week for the remaining two hundred and seventy-two weeks.

The respondent will also pay to the petitioner's counsel the sum of $150 for his services in this cause.

<div align="right">

W. E. STUBBS,
*Deputy Commissioner of Compensation.*